NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
-----------------------------------------------------------X

In Re:                                                                                  CHAPTER 13

NORMA J. DRAGO,                                                         CASE NO. 15-15615 (JNP)

         Debtor.
-----------------------------------------------------------X         **OPINION**


**APPEARANCES:**

Allen Gorski, Esq.
Gorski & Knowlton PC
311 Whitehorse Avenue, Suite A
Hamilton, NJ 08610
*Attorneys for the Debtor, Norma J. Drago*

Kyle F. Eingorn, Esq.
Dembo, Brown & Burns LLP
1300 Route 73, Suite 205
Mount Laurel, NJ 08054
*Attorneys for Creditor, McCormick 106, LLC*

Donna Wenzel, Esq.
Office of the Chapter 13 Standing Trustee
535 Route 38, Suite 580
Cherry Hill, NJ 08002
*Attorney for Isabel Balboa, Esq., Chapter 13 Trustee*


**JERROLD N. POSLUSNY, JR., U.S. Bankruptcy Judge**

## INTRODUCTION

Before the Court is (i) confirmation of the Debtor's Chapter 13 plan; (ii) McCormick 106, LLC's, objection to plan confirmation (the "Objection");[1] and (iii) McCormick's motion for relief from the automatic stay (the "Motion for Stay Relief"). As discussed below, confirmation of the plan is denied and the Motion for Stay Relief is granted, effective thirty days from the entry of an order related to this Opinion.

## BACKGROUND

Norma J. Drago (the "Debtor") filed a Chapter 13 petition on March 30, 2015 (the "Petition Date"). In 2006, the Debtor and her ex-husband borrowed $475,000 from Bank United, FSB, with the loan being secured by a mortgage on property located at 228 Atlantic Avenue, Ocean City, NJ (the "Property"). Later, the Debtor executed and delivered to Bank United a revised note in the amount of $538,816.02.

The loan was subsequently transferred to McCormick. Because the Debtor had defaulted on the loan, McCormick filed a foreclosure action. On September 11, 2014, the superior court entered a final judgment of foreclosure (the "Judgment") in the amount of $574,948.02.

As of the Petition Date, the Debtor owed McCormick $585,725.77. The Debtor's Schedule A lists the Property's value at $450,000. The Debtor also produced a comparable market analysis ("CMA") valuing the property at $320,000.

Schedule I states that the Debtor is self-employed at Amora Cleaning and receives pension income resulting in a total net monthly income of $4,655. Schedule J indicates that the

---

[1] The Chapter 13 Trustee objected to confirmation at the hearing on November 12, 2015. On December 9, 2015, the Trustee withdrew her objection.

2

Debtor's monthly expenses are $3,649.86, leaving her with a monthly disposable income of $1,005.14. McCormick argues that this amount fails to account for the payment of income taxes.

The Debtor's first Chapter 13 plan proposed to pay $350 per month to the Chapter 13 Trustee starting on April 1, 2015 for approximately six months, plus $1,000 per month for fifty-four months. McCormick filed the Objection, arguing that: (i) the Debtor improperly proposed to pay McCormick only $60,000 through the plan, (ii) the plan was not feasible, and (iii) the Debtor was required to pay the full amount of the Judgment through the plan.

Subsequently, McCormick filed the Motion for Stay Relief, seeking leave to proceed with its foreclosure action against the Property. The Debtor opposed the Motion for Stay Relief.

On September 9, 2015, the Debtor filed a modified plan (the "Plan"), which proposes to pay $350 per month to the Chapter 13 Trustee starting on April 1, 2015 for six months, plus $1,000 per month for twelve months, and $2,000 per month for forty-two months. The Plan proposes payments of $98,100 to the Chapter 13 Trustee, and a payment of $24,468.65 (the proceeds of an insurance check) to McCormick.

At a hearing (the "Hearing") on November 12, 2015, the Debtor testified as to the feasibility of the Plan. Among other things, the Debtor noted an upward trend with her cleaning business, the prospect of obtaining additional employment as a caregiver, and the receipt of monthly pension and social security payments.

McCormick maintains that the Plan is not feasible.

## JURISDICTION

The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court dated July 10, 1984, as amended September 18, 2012, referring all bankruptcy cases to the bankruptcy court. This

matter is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2)(A), (G), and (L). Venue is proper in this Court pursuant to 28 U.S.C. § 1408. The following constitutes the Court's findings of fact and conclusions of law as required by Fed. R. Bankr. P. 7052.[2]

## DISCUSSION

I.  **The Plan is Not Feasible**

The Court has considered the written submissions as well as the Debtor's testimony, and arguments made at the Hearing. The Court is cognizant that all projections of income and expenses are approximations which were based on the Debtor's past and present financial data. Based on the record from the Hearing, the Court finds that the Debtor did not demonstrate that she has the financial capacity to make payments through the life of the Plan.

"Chapter 13 in the Bankruptcy Code specifically requires feasibility as a precondition to plan confirmation." In re Buccolo, 397 B.R. 527, 530 (Bankr. D.N.J. 2008) aff'd, 2009 WL 2132435 (D.N.J. July 13, 2009) (citing 11 U.S.C. § 1325(a)(6)). Section 1325(a)(6) provides that confirmation is conditioned upon whether the Debtor "will be able to make all payments under the plan and to comply with the plan." 11 U.S.C. § 1325(a)(6).

"While the feasibility requirement is not rigorous, the plan proponent must, at minimum, demonstrate that the Debtor's income exceeds expenses by an amount sufficient to make the payments proposed by the plan." In re Bernardes, 267 B.R. 690, 695 (Bankr. D.N.J. 2001) (citations omitted). The Debtor does not need to prove that the Plan is guaranteed to be successful. See In re Mycek, 2013 WL 9994332, at *4 (C.D. Cal. Oct. 22, 2013); In re Anderson, 18 B.R. 763, 765 (Bankr. S.D. Ohio) aff'd, 28 B.R. 628 (S.D. Ohio 1982). Rather, the

---

[2] To the extent that any of the findings of fact constitute conclusions of law, they are adopted as such. Conversely, to the extent that any conclusions of law constitute findings of fact, they are adopted as such.

4

Court must make a factual determination as to whether the plan has a "reasonable likelihood of success." In re Buccolo, 397 B.R. at 530. "Generally, visionary or speculative Chapter 13 plans will not meet the feasibility standard." In re Eckert, 485 B.R. 77, 85 (Bankr. M.D. Pa. 2013). Furthermore,

> [I]f a chapter 13 debtor is self-employed, the feasibility of his/her proposed plan will be based upon his/her earnings history (preferably demonstrated by federal tax returns), his/her current income and the likely stability of that income in the future. If he/she has no such income at the time of the confirmation hearing, the debtor has the burden to demonstrate a sufficient likelihood that adequate self-employment income is imminent, or that some other income source, such as governmental benefits, can fund his/her plan. See generally, e.g., In re Hammonds, 729 F.2d 1391, 1394–95 (11th Cir. 1984); In re Upton, 363 B.R. 528, 535 n. 6 (Bankr. S.D. Ohio 2007); In re Ford, 345 B.R. 713, 722 (Bankr. D. Colo. 2006). Absent a showing that the chapter 13 debtor will likely have sufficient income to fund her proposed plan, confirmation will be denied.

In re Soppick, 516 B.R. 733, 749 (Bankr. E.D. Pa. 2014) (emphasis added).

At the Hearing, the Debtor testified in support of confirmation as follows:

(i)     Her cleaning business has shown an upward trend.

(ii)    She may obtain additional employment as a caregiver, which pays approximately $200 per day. However, she would only be able to work part time initially, and the Debtor has not demonstrated how she will be able to maintain her cleaning business while working as a caregiver.

(iii)   She receives a monthly pension payment of approximately $655.

(iv)    Her net monthly income listed in Schedule I ($4,655) should be adjusted to account for a monthly social security payment of approximately $1,000 starting in November 2016.

(v) She is holding an insurance check for $24,468.65 which she will turn over to the Chapter 13 Trustee to help fund the Plan if it is confirmed.

(vi) She plans to bring a lender liability suit to void the Judgment. However, after meeting with several attorneys to discuss the case, she has not been able to find an attorney willing to enter into an engagement agreement.

(vii) She has a pending appeal of a denied Reconstruction, Rehabilitation, Elevation and Mitigation (RREM) claim.

(viii) She has a possible Federal Emergency Management Agency (FEMA) claim.

(ix) She proposes to devote her homestead rebate for 2013 and 2014 as additional funding for the Plan.

While the Debtor testified that she had not received any formal offers of employment for a caregiver position, approximately one week after the Hearing and after the record was closed, the Debtor submitted a letter to the Court, affixed to a handwritten contract, indicating that she had been hired to be a caregiver part-time in November and full-time in December. The Debtor stated that she anticipates she "will be able to do the caregiver services in addition to running [the] home cleaning business." Certification in Support of Confirmation ¶ 5. However, the Debtor does not provide any support for this conclusion. Because this submission was made after the record was closed, it should not be considered as part of this Opinion. However, as discussed below, the Court's review of the caregiver employment agreement raises additional concerns.

There are two primary reasons that the Plan cannot be confirmed.

First, and most importantly, the Plan does not account for the payment of income taxes. The Debtor testified that her combined state and federal tax obligations for 2014 were

6

approximately $6,466 (roughly $538 per month).[3] When tax obligations are added to the Debtor's estimated monthly living expenses ($1,800) and her current monthly mortgage obligation ($1,990), the Debtor's monthly expenses total approximately $4,328. With the Debtor's estimated monthly income for the year 2015 at $4,655, the Debtor is left with approximately $327 per month to fund the Plan (i.e., $4,655 - $4,328 = $327). To the extent that there are taxes on the Debtor's pension, her disposable monthly income will be reduced even further. Thus, the Debtor does not have enough disposable income to satisfy the present proposed Plan payments, which start at $1,000 per month.

When the Debtor starts collecting social security in November 2016, her monthly income will increase to $5,655. In turn, her taxes will increase. As of 2016, even assuming no additional tax obligations, the Debtor's disposable income will be approximately $1,327 (i.e., $5,655 - $4,328 = $1,327). This is not enough to satisfy the Plan payments which the Debtor proposes to increase to $2,000 per month.

For the above reasons, the Plan is not feasible in the immediate future. While the Debtor submitted—after the record was closed—that she now earns $200 per day as a caregiver, there was no testimony as to how her net income will change, since the Debtor will likely have to hire a third party to help with the cleaning business. There is nothing in the record showing the net income to the Debtor after paying an employee, or that customers would not elect to hire a new cleaning company if the Debtor were not directly providing the cleaning services. The Court has

---

[3] The Debtor conceded that, since she earned more money in 2015 than in 2014, it is likely that her tax obligations will increase. The Debtor will also be obligated to pay income taxes on her social security checks starting in November 2016. The Debtor testified that she had not used all of the available tax deductions and that her future taxes may not be as high if she takes more deductions. However, the Debtor did not explain: (a) why she neglected to take advantage of certain tax deductions, (b) which deductions she could have taken, (c) the amount of the additional deductions, or (d) how the circumstances will change going forward.

7

reservations whether the Debtor's net monthly income will increase by an amount sufficient to pay the proposed plan payments.

Second, the Debtor will not have enough income to continue making payments when the mortgage converts from interest only to principal and interest in months fifty through sixty of the Plan. In June 2019, the Debtor's monthly mortgage payment will increase by $1,500 - $2,000 per month under the terms of the loan.[4] Thus, in 2019, the Debtor's monthly expenses will increase to a total of approximately $5,800 - $6,300. At that point, the Debtor's net monthly income could be <u>in the red</u> by over $600. While the Debtor testified about the prospect of obtaining additional employment as a caregiver, and that she expects an uptick in her cleaning business, there was no testimony to demonstrate that the Debtor's income would increase to an amount sufficient to make the proposed Plan payments. Indeed, the Debtor cannot satisfy the requirement under 11 U.S.C. § 1325(a)(6) with zero or negative projected disposable income. <u>See e.g.</u>, <u>In re Stanley</u>, 441 B.R. 37, 43 (Bankr. M.D.N.C. 2010). Therefore, the Plan is not feasible.

I.     **The Motion for Stay Relief is Granted**

McCormick is entitled to stay relief under 11 U.S.C. § 362(d)(2), which provides that relief shall be granted "with respect to a stay of an act against property under subsection (a) of this section, if— (A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization . . . ." 11 U.S.C. § 362(d)(2). "The creditor has the burden of proving that the debtor lacks equity in the property while the debtor has the burden

---

[4] Although the exact amount of the increase is not known, the parties stipulated that it will be $1,500 - $2,000 per month.

8

of proving that the property is necessary for an effective reorganization." In re Fairfield Executive Associates, 161 B.R. 595, 599 (D.N.J. 1993) (citing 11 U.S.C. § 362(g)).

McCormick asserts that it is undersecured because the value of its claim exceeds $580,000 while the CMA values the Property at only $320,000. The Debtor testified that, if repaired, the Property would be worth approximately $500,000. However, the Court did not receive any testimony as to how repairs would be funded, especially in light of the Debtor's proposal to turn over insurance funds and potential proceeds from her RREM and FEMA claims to McCormick as part of the Plan. Even if the Court were to rely upon the Debtor's valuation, the Property would still be worth less than the value of McCormick's claim. Thus, McCormick has satisfied its burden of proving that the Debtor lacks equity in the Property.

In order to show that the Property is necessary for an effective reorganization:

> [T]he debtor must show that there is "a reasonable possibility of a successful reorganization within a reasonable time." As the Third Circuit . . . observed, "while 'a lift stay hearing should not be transformed into a confirmation hearing,' '[t]he effective reorganization requirement enunciated by the Supreme Court . . . require[s] a showing by a debtor . . . that a proposed or contemplated plan is not patently unconfirmable and has a realistic chance of being confirmed.'" Thus, a creditor is entitled to "relief from the automatic stay if there is no reasonable likelihood of reorganization due to creditor dissent or feasibility considerations." Similarly, a creditor is entitled to stay relief where the proposed plan violates the requirements for confirmation.

In re Fairfield Executive Associates, 161 B.R. at 599 (citations omitted). For the reasons set forth above, the Plan cannot be confirmed. Since the Plan is not feasible, the Court must find that the Property is not necessary for an effective reorganization. Thus, the Motion for Stay Relief is granted. However, such stay relief will not be effective until thirty days from the entry of an order related to this Opinion.

9

## CONCLUSION

When factoring in the cost of taxes and the increased loan payments beginning in 2019, the Debtor will not be able to maintain payments through the life of the Plan. Thus, the Plan is not feasible and confirmation must be denied. The Debtor retains the right to file a modified plan.

Because the Plan is not confirmable, the Court need not decide whether the Debtor would have been required to pay the full amount of the Judgment as opposed to curing the mortgage arrears and reinstating the mortgage outside of the Plan.

Finally, because the Debtor does not have equity in the Property and it is not necessary for the Debtor's reorganization, the Motion for Stay Relief is granted, effective thirty days from the entry of an order related to this Opinion.

Dated: December 18, 2015

JERROLD N. POSLUSNY, JR.
U.S. BANKRUPTCY COURT JUDGE